**Not for Publication**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCURA, WIGFIELD, HEYER, STEVENS & CAMMAROTA, LLP<br><br>Plaintiff,<br><br>v.<br><br>CITIBANK, NA, *et al.*,<br><br>Defendants. | Civil Action No.: 2:21-cv-12835 (ES) (LDW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiff Scura, Wigfield, Heyer, Stevens & Cammarota, LLP ("Plaintiff") initiated this action against Citibank, NA ("Citibank"), Diamond PLC ("Diamond"), Access Bank PLC (formerly Diamond Bank PLC) ("Access Bank"), and Miguel Francisco in connection with alleged wire fraud. (D.E. No. 1). In Count VI of its second amended complaint, Plaintiff brings a single claim against Defendant Citibank under N.J.S.A. 12A:4A-207 ("Section 207"). (D.E. No. 47 ("Second Amended Complaint" or "SAC") ¶¶ 53–58). Before the Court is Defendant Citibank's motion to dismiss Count VI of the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 48 ("Motion"); D.E. No. 48-1 ("Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendant Citibank's Motion is **GRANTED**.

I.    **BACKGROUND**

Plaintiff is a law firm providing legal services in Wayne, New Jersey.  (SAC ¶¶ 8–9).

Plaintiff maintains an attorney trust account with ConnectOne Bank ("ConnectOne"), a non-party

to this case.  (*Id.* ¶ 9).

On or about November 15, 2019, Plaintiff alleges that an individual named Miguel

Francisco requested legal assistance in resolving an employment dispute.  (*Id.* ¶ 10).   On

November 25, 2019, Plaintiff's office received a certified bank check in the amount of

$119,000.00 made payable to Plaintiff.  (*Id.* ¶ 11).  Plaintiff's bookkeeper deposited the check

with ConnectOne.  (*Id.* ¶ 12).  On November 26, 2019, Mr. Francisco instructed Plaintiff to wire

$118,550.00 to "Diamond PLC."  (*Id.* ¶¶ 13–15 & 55).  That same day, Plaintiff directed its bank,

ConnectOne, to initiate the wire transfer.  (*Id.* ¶¶ 14–15 & 55).  Defendant Citibank then processed

ConnectOne's payment order and wired the funds to Access Bank PLC (formerly Diamond *Bank*

*PLC*) instead of to Diamond PLC.  (*Id*. ¶ 56).  Plaintiff alleges that there was a discrepancy on

ConnectOne's payment order between the beneficiary's name and account number.  (*See id.*; *see*

*also* D.E. No. 52-1 at 17).[1]  On November 29, 2019, ConnectOne informed Plaintiff that the check

in the amount of $119,000.00 was fraudulent.  (SAC ¶ 16).  Plaintiff believes the funds have been

retained by Access Bank.  (*Id.* ¶¶ 29, 41 & 51).

Plaintiff initiated this action on June 22, 2021.  (D.E. No. 1).  On February 1, 2022, Plaintiff

filed the SAC, asserting a single claim against Defendant Citibank under Count VI pursuant to

Section 207—a provision of Article 4A of the Uniform Commercial Code ("UCC") as adopted in

New Jersey.  (SAC ¶¶ 53–58).  On February 15, 2022, Defendant Citibank filed the instant Motion,

which is fully briefed.  (Mov. Br.; D.E. No. 52 ("Opp. Br."); D.E. No. 53 ("Reply")).

---

[1]    The pin cites to Docket Entry number 52-1 refer to the pagination automatically generated by the Court's electronic filing system.

## II.     LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although the Court is generally confined to the allegations in the pleadings in ruling on a motion to dismiss under Rule 12(b)(6), it may, without converting the motion to one for summary judgment, consider a document "integral to or explicitly relied upon in the complaint," as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (first quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996); and then quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)); *see also Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

### III.   DISCUSSION

Defendant Citibank argues that Plaintiff lacks standing to assert a UCC claim under Article 4A because Plaintiff fails to allege either (i) that Plaintiff was Defendant Citibank's customer or (ii) that there was privity between Plaintiff and Defendant Citibank.  (Mov. Br. at 3–9).  In response, Plaintiff concedes that it was not a customer of Defendant Citibank, but nonetheless argues that the Court should not impose a privity requirement in this instance.  (Opp. Br. at 10–18).  As explained below, the Court agrees with Defendant Citibank that privity is required and, because Plaintiff fails to allege privity, it lacks standing to assert a claim against Defendant Citibank under Article 4A.

Article 4A covers claims arising from electronic funds transfers, which are defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary."  N.J.S.A. 12A:4A-104(1).  Article 4A defines the different parties to a funds transfer as follows: "'[o]riginator' means the sender of the first payment order in a funds transfer[,]" N.J.S.A. 12A:4A-104(3); "'[o]riginator's bank' means the receiving bank to which the payment order of the originator is issued if the originator is not a bank[,]" N.J.S.A. 12A:4A-104(4); "'[b]eneficiary' means the person to be paid by the beneficiary's bank[,]" N.J.S.A. 12A:4A-103(1)(b); and "'[b]eneficiary's bank' means the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order[,]" N.J.S.A. 12A:4A-103(1)(c).  A funds transfer is "complete" when there has been acceptance of a payment order.   N.J.S.A. 12A:4A-104(1) ("[a] funds transfer *is completed by acceptance* by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order") (emphasis added); *see also* N.J.S.A. 12A:4A-402, cmt. 2 ("[i]f that acceptance by Bank B does not occur, the funds transfer has miscarried").

4

Section 207(2) assigns the rights and liabilities of the parties in a funds transfer "[i]f a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons"—in other words, if there is a conflict on the payment order between the name and the account number of the beneficiary.  N.J.S.A. 12A:4A-207(2).  Specifically, Section 207(2)(b) imposes liability when "the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons[.]"  N.J.S.A. 12A:4A-207(2)(b).  In that circumstance, Section 207(2)(b) provides that "no person has rights as beneficiary" and "acceptance of the order cannot occur."  *Id*.

Section 402 provides a remedial scheme for claims brought under Section 207.  *See* N.J.S.A. 12A:4A-402; *see also Wellton Int'l Express, et.al. v. Bank of China (Hong Kong), et.al.*, No. 19-6834, 2020 WL 1659889, at *3 (S.D.N.Y. Apr. 3, 2020), *appeal withdrawn sub nom.*, *Wellton Int'l Express v. Bank of China (Hong Kong) Ltd., et.al.*, No. 20-1600, 2021 WL 2026845 (2d Cir. May 6, 2021); *Simple Helix, LLC v. Relus Techs., LLC*, 493 F. Supp. 3d 1087, 1100 (N.D. Al. Oct. 8, 2020); N.J.S.A. 12A:4A-207, cmt. 2 (citing Section 402(2) for the rights and liabilities of the parties to a claim under Section 207(2)(b)).  Specifically, Section 402(2) provides that, "[w]ith respect to a payment order issued to the beneficiary's bank, acceptance of the order by the bank obliges the sender to pay the bank the amount of the order, but payment is not due until the payment date of the order."  N.J.S.A. 12A:4A-402(2).  Further, Section 402(3) provides that "[t]he obligation of the sender to pay its payment order is excused if the funds transfer is not completed by acceptance by the beneficiary's bank[.]"  N.J.S.A. 12A:4A-402(3).  And Section 402(4), known as the "money-back guarantee," provides that, "[i]f the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged

to refund payment to the extent the sender was not obliged to pay." N.J.S.A. 12A:4A-402(4); *see also* N.J.S.A. 12A:4A-402, cmt. 2.

The parties have not provided, and the Court has not found, any precedent from the Third Circuit or from the New Jersey Supreme Court analyzing whether Section 402's remedial scheme requires privity between the sender and the bank from which the sender seeks a refund.[2] "[R]ecognizing that the UCC is to be construed uniformly, particularly in the area of banking procedures and negotiable instruments[,]" the Court will "consider the decisions of other [jurisdictions] that have addressed this issue as persuasive authority." *See N.J. Lawyers' Fund for Client Prot. v. Pace*, 863 A.2d 402, 406 (N.J. Super. Ct. App. Div. 2005), *aff'd*, 892 A.2d 661 (2006).

In determining whether Section 402 incorporates a privity requirement, the Court is persuaded by the reasoning of the Second Circuit in *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d. 97 (2d Cir. 1998). There, the Second Circuit upheld the District Court's interpretation of New York's parallel provision, N.Y.U.C.C.§4-A-402, as requiring privity between the parties and affirmed the District Court's grant of summary judgment on that basis. *Id*. at 106. The Second Circuit looked to the comments to N.Y.U.C.C. §4-A-402, which are identical to the comments adopted in Section 402, to support a privity requirement. *Id*. at 101. Comment two clarifies the money-back guarantee of Section 402(4) in relevant part as follows: "if noncompletion of the funds transfer is due to the fault of an intermediary bank rather than Bank A . . . *Bank A must refund*

---

[2]    The Court's independent research reveals one case, *Wheels Investments, LLC v. Wells Fargo Bank, N.A.*, No. 19-658, 2021 WL 8895130 at *3 (M.D. Fl. Apr. 29, 2021), where the district court declined to extend the privity requirement to claims under Florida's parallel iteration of the UCC. *See id.* (citing Fla. Stat. § 670.207). The court reasoned that Section 207 "contains no explicit privity requirement" and the defendant "[did] not explain how the text of this section implies a privity requirement." *Id.* However, the court did not mention the remedial scheme under Section 402, but instead interpreted Section 207 in isolation. Here, however, the parties do not dispute that Section 402 provides the remedial scheme for Section 207 claims. (*See* Mov. Br. at 6; Opp. Br. at 17–18). Therefore, the Court does not find *Wheels Investments, LLC* persuasive.

*payment to Originator, and Bank A has the burden of obtaining refund from the intermediary bank that it paid.*" N.Y.U.C.C. §4-A-402, cmt. 2 (emphasis added). The Second Circuit noted that "this comment makes plain the intent of the Article [4A] drafters to effect an orderly unraveling of a funds transfer in the event that the transfer was not completed . . . by incorporating a 'privity' requirement into the 'money back guarantee' provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." *Grain Traders, Inc.*, 160 F.3d at 101; *see also Frankel-Ross v. Congregation OHR Hatalmud*, No. 15-6566, 2016 WL 4939074 at * 3 (S.D.N.Y. Sept. 12, 2016) (dismissing the plaintiff's claim under New York's identical iteration of the UCC, finding that the plaintiff did not have a cause of action against the beneficiary bank because there was no privity between the parties as required by the remedial scheme in Section 402); *Wellton Int'l Express*, 2020 WL 1659889 at * 3 (same); *Simple Helix, LLC*, 493 F. Supp. 3d at 1100, 1123 (dismissing a claim under Alabama's identical iteration of the UCC by an intended beneficiary against the beneficiary bank and originator bank and finding that the beneficiary bank's "'nonacceptance' of the payment order triggered rights in favor of only the parties to the payment orders"); *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 981 (W.D. Tenn. 2020), *appeal dismissed*, No. 21-5038, 2021 WL 1511687 (6th Cir. Jan. 29, 2021) (finding that, because "[t]he beneficiary's bank is not a party to the payment order at issue in both §§ 205 and 207[,] if there is a lack of privity between plaintiffs and the beneficiary's bank in cases involving alleged violations of § 207, that same lack of privity is a barrier to a plaintiff's § 205 claim").

Further, the Second Circuit noted that "sound policy reasons" support "limiting the right to seek a refund to the sender who directly paid the receiving bank." *Grain Traders, Inc.*, 160 F.3d at 102. "To allow a party to, in effect, skip over the bank with which it dealt directly, and go to

the next bank in the chain would result in uncertainty as to rights and liabilities, would create a

risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the

financial circumstances and various legal relations of the other parties to the transfer." *Id.*; *see*

*also Receivers of Sabena S.A. v. Deutsche Bank A.G.*, 142 A.D.3d 242, 255 (N.Y. App. Div. 2016)

("'sound policy reasons' support Article [4A]'s requirement that each party to an [electronic funds

transfer] seek redress for a failed transfer only against a party with which it is in direct privity in

the chain of payment orders") (citing *Grain Traders*, 160 F.3d at 102);  *Frankel-Ross*, 2016 WL

4939074, at \*4 (noting the privity requirement "is perfectly logical").

Section 402's privity requirement is additionally supported by the comments to Section

104, which defines a funds transfer.  *See* N.J.S.A. 12A:4A-104.  Comment one delineates the

obligations of the different parties to a funds transfer in different scenarios, including, in relevant

part, the following:

> Assume . . . X instructs Bank A to pay $1,000,000 to Y's account in Bank
> B.  With respect to this payment order, X is the sender, Y is the beneficiary,
> and Bank A is the receiving bank.  Bank A carries out X's order by
> instructing Bank B to pay $1,000,000 to Y's account.  This instruction is a
> payment order in which Bank A is the sender, Bank B is the receiving bank,
> and Y is the beneficiary.  When Bank A issued its payment order to Bank
> B, Bank A "executed" X's order.  Section 4A-301(a).  In the funds transfer,
> X is the originator, Bank A is the originator's bank, and Bank B is the
> beneficiary's bank.  When Bank A executed X's order, *X incurred an
> obligation to pay Bank A* the amount of the order.  Section 4A-402(c).
> When Bank B accepts the payment order issued to it by Bank A, *Bank B
> incurs an obligation to Y* to pay the amount of the order (Section 4A-404(a))
> and *Bank A incurs an obligation to pay Bank B*.  Section 4A-402(b).
> Acceptance by Bank B also results in payment of $1,000,000 by X to Y.
> Section 4A-406(a).  In this case two payment orders are involved in the
> funds transfer.

*Id*., cmt. 1 (emphasis added).  This example makes clear that as the funds transfer is executed, each

party incurs an obligation to pay *only* against the other party to the payment order, not against the

other parties to the funds transfer as a whole.  In other words, each party is obliged only to a party

with whom that party has privity.  Accordingly, the Court is persuaded by the Second Circuit's

analysis that privity between the sender and the bank from which the sender seeks a refund is

required to invoke Section 402(4)'s money-back guarantee.

Here, according to Plaintiff's allegations, Plaintiff was the originator, ConnectOne was the

originator's bank, Defendant Citibank was the beneficiary's bank, Diamond was the intended

beneficiary, and Access Bank was the ultimate beneficiary.  Plaintiff initiated the funds transfer

by issuing a payment order to ConnectOne.  Thus, the only parties to that payment order were

*Plaintiff and ConnectOne*.  Then, ConnectOne issued a second payment order to Defendant

Citibank—the only parties to that payment order were *ConnectOne and Defendant Citibank.  See*

*Wellton Int'l Express*, 2020 WL 1659889, at *3 ("As the beneficiary bank, Wells Fargo was not a

party to the [originator's] payment order.").  As such, Plaintiff does not adequately allege that there

was privity between Plaintiff and Defendant Citibank because, according to its allegations, they

were parties to two separate payment orders.

Plaintiff argues that the *Grain Traders* decision, and therefore the privity requirement,

should be limited to cases where the funds transfer was incomplete.  (Opp. Br. at 17).  The Court

disagrees.  First, contrary to Plaintiff's contention, the alleged transfer *would* be considered

incomplete under Article 4A because, accepting Plaintiff's allegations as true, Defendant Citibank

never accepted ConnectOne's payment order.  *See* N.J.S.A. 12A:4A-207(2)(b) ("If no person has

rights as beneficiary, acceptance of the order cannot occur.").  Plaintiff appears to use the term

"incomplete transaction" to refer to situations where the funds in question were suspended or failed

to reach a beneficiary.  But, as explained above, Article 4A provides that a funds transfer is

completed by acceptance of a payment order, not by the actual transfer of funds into a beneficiary's

account.  *See, e.g.*, N.J.S.A. 12A:4A-104(1) ("[a] funds transfer *is completed by acceptance* by the

beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order") (emphasis added).

Second, Plaintiff cites no legal authority supporting its narrow reading of *Grain Traders*, and the Court has not found any.  Plaintiff summarily attempts to distinguish *Frankel-Ross* and *Wellton Int'l Express* on the basis that their reliance on *Grain Traders* was "out of context."  (Opp. Br. at 14–16).  Because the Court declines to read *Grain Traders* narrowly as only requiring privity in an incomplete transfer, Plaintiff's attempt to distinguish *Frankel-Ross* and *Wellton Int'l Express* on that basis is unavailing.  Plaintiff also attempts to distinguish *Frankel-Ross* because, in that case, "the beneficiary/account holder was a customer of the defendant bank and was not the fraudster . . . [but] an innocent party to whom the fraudster was indebted.  In the present case the fraudster . . . was the intended beneficiary of the wire transfer." (*Id*. at 15).  It is not clear to the Court why the innocence of the beneficiary of the funds transfer would affect the privity requirement, which does not hinge on the identity of the beneficiary but rather on the relationship between the originator and the beneficiary's bank.  As such, the Court finds Plaintiff's additional attempt to distinguish *Frankel-Ross* unavailing.

The remaining cases relied upon by Plaintiff do not lead to a contrary conclusion. Specifically, Plaintiff summarily argues that the Court should not require privity because other courts have addressed Section 207 claims "without precluding the same for lack of privity."  (*Id*. at 16–17 (citing *First Sec. Bank of N. M., N.A. v. Pan Am. Bank*, 215 F.3d 1147 (10th Cir. 2000); *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 352 F. Supp. 3d 1226 (S.D. Fla. 2018), *aff'd*, 795 F. App'x 741 (11th Cir. 2019); and *Studco Bldg. Sys. U.S., LLC v. 1st Advantage Fed. Credit Union*, 509 F. Supp. 3d 560 (E.D. Va. 2020))).  However, none of the cases Plaintiff cites analyzed the issue of privity, and the parties in those cases did not raise any privity issue.

10

Finally, Plaintiff argues that requiring privity for claims under Section 207 would preclude plaintiffs in its position, as originator, from seeking redress against a bank in Defendant Citibank's position, as a beneficiary bank, "even when the bank knowingly violated their own internal procedures and the provisions of the [UCC]" because an originator is never in privity with a beneficiary bank. (Opp. Br. at 17). The Court disagrees. To start, Plaintiff is not left without any remedy because it may seek relief from its bank, ConnectOne. *See* N.J.S.A. 12A:4A-402(4); *see also id.*, cmt 2 ("Bank A must refund payment to Originator"); *Grain Traders Inc.*, 160 F.3d 97 at 102 (noting Section 402 "allows each sender of a payment order to seek refund only from the receiving bank it paid"); *Simple Helix, LLC*, 493 F. Supp. 3d at 1101 (explaining that "if the originator sends its bank a payment order; the originator honors the order; and § 7-4A-207(b)(2) forecloses the beneficiary's bank's acceptance of the order, the originator may seek a refund of the payment from its bank"). Furthermore, as Defendant Citibank points out, this outcome was contemplated by the drafters of Article 4A. (*See* Reply at 6). Indeed, the drafters of Article 4A intended to craft rules that would allow "the various parties to funds transfers . . . to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately." N.J.S.A. 12A:4A-102, cmt. 1. For that reason, Article 4A "specifically endorses clear bright-line rules." *Peter E. Shapiro, P.A.*, 352 F. Supp. 3d at 1230.

Plaintiff cannot allege any facts that would create privity between itself and Defendant Citibank, and the Court need not permit Plaintiff a third opportunity to amend if it would be futile. *See, e.g.*, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Accordingly, the Court grants the Motion *with prejudice.*[3]

---

[3]    Because Plaintiff cannot overcome the threshold issue of privity, the Court does not address the parties' remaining arguments. (Mov. Br. at 4–5, 9–11; Opp. Br. at 18–22).

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion and dismisses

Count VI of the SAC *with prejudice*.  An appropriate Order accompanies this Opinion.

**Dated**: October 3, 2022                                            */s/ Esther Salas*
                                                                      **Esther Salas, U.S.D.J.**