**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SCURA, WIGFIELD, HEYER, STEVENS & CAMMAROTA, LLP,<br><br>      **Plaintiff,**<br><br>      v.<br><br>DIAMOND PLC, ACCESS BANK, PLC (formerly DIAMOND BANK, PLC), MIGUEL FRANCISCO, JOHN DOES 1-100, ABC CORPORATIONS 1-100 (being fictitious parties),<br><br>      **Defendants.** | Civil Action No.: 21-12835 (ES) (LDW)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Access Bank, PLC's ("Access Bank") motion to dismiss, (D.E. No. 88), Plaintiff Scura, Wigfied, Heyer, Stevens & Cammarota, LLP's ("Plaintiff") Second Amended Complaint, (D.E. No. 47 ("SAC")). The Court has carefully considered the parties' submissions in connection with Access Bank's motion, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated herein, Access Bank's motion to dismiss is **GRANTED IN PART** and **DENIED** *without prejudice* **IN PART**.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff is a law firm that maintained an attorney trust account at nonparty ConnectOneBank. (SAC ¶ 9). "On or about November 15, 2019, Plaintiff received an e-mail from

an individual identifying themselves as Miguel Francisco in connection with an employment related claim he had with his former employer LabCorp." (*Id.* ¶ 10). "Specifically, Mr. Francisco alleged that LabCorp owed him $119,000.00 due and owing under a severance agreement. Plaintiff's office received e-mails from someone purporting to work at LabCorp confirming the same." (*Id.*).

"On Monday November 25, 2019, Plaintiff's office received a certified bank check in the amount of $119,000.00 made payable to Plaintiff from HSBC Bank." (*Id.* ¶ 11). "Plaintiff's bookkeeper scanned the aforementioned check for deposit to ConnectOne on or about November 25, 2019." (*Id.* ¶ 12). Plaintiff's bookkeeper thereafter communicated with Mr. Francisco regarding instructions for wiring the proceeds of that check. (*Id.* ¶ 13). Mr. Francisco instructed Plaintiff to wire the funds to Defendant Citibank, though "[t]he ultimate beneficiary was Defendant Diamond [PLC]." (*Id.* ¶¶ 13–14). Plaintiff processed that wire transfer, in the amount of $118,550.00, on November 26, 2019. (*Id.* ¶ 15). Plaintiff alleges that Defendant Citibank thereafter wired those funds to Defendant Access Bank. (*Id.* ¶¶ 38–41). On November 29, 2019, ConnectOneBank advised Plaintiff "that the HSBC check in the amount of $119,000.00 was fraudulent." (*Id.* ¶ 16). Though Plaintiff then attempted to stop its outgoing wire payment to Citibank, it was ultimately unable to do so, and Plaintiff has therefore lost $119,000.00 as a result. (*Id.* ¶¶ 17–34).

## B.    Relevant Procedural History

Plaintiff originally commenced this matter on June 22, 2021, filing a Complaint against Defendants Citibank, NA, and Access Bank and asserting causes of action for fraud, aiding and abetting fraud, and negligence. (*See generally* D.E. No. 1). Plaintiff filed an Amended Complaint on June 24, 2021, asserting the same claims but substituting Defendant Diamond PLC in lieu of

Access Bank. (*See generally* D.E. No. 5).[1] Defendant Citibank, N.A. moved to dismiss the Amended Complaint, (D.E. No. 10), and Plaintiff thereafter moved (with leave of court) for permission to file another amended pleading. (D.E. No. 43). The undersigned terminated Citibank's motion to dismiss pending resolution of Plaintiff's motion to amend. (D.E. No. 44). Based on Citibank's later representation that it would not oppose Plaintiff's motion for leave to amend, the Hon. Leda D. Wettre, U.S.M.J. granted that motion by Order dated January 28, 2022. (D.E. No. 46).

Plaintiff filed its current, operative pleading—the SAC—on February 1, 2022, naming Citibank, Diamond PLC, Access Bank and Miguel Francisco as defendants and asserting claims for fraud (against Defendants Diamond PLC, Access Bank, and Francisco), aiding and abetting fraud (against Access Bank), negligence, (against Access Bank), conversion (against Access Bank), and violation of New Jersey statutory law (as to Defendant Citibank) . (*See generally* D.E. No. 47). Citibank filed a motion to dismiss, (D.E. No. 48), which this Court granted by Order dated September 30, 2022, dismissing Plaintiff's claim against Citibank with prejudice, (D.E. No. 64). By letter dated December 29, 2023, Plaintiff advised that it was "no longer interested in pursuing its wire fraud claims against Defendant Miguel Francisco as Plaintiff . . . now understands that the names and address of Miguel Francisco are probably fictitious." (D.E. No. 75). Plaintiff further advised that it was "still actively pursuing its claims against [Access Bank], formerly known as Diamond Bank, PLC, which is a bank located in Nigeria[,]" (*id.*), and that it was making efforts to serve Access Bank through diplomatic channels. (*Id.*). By Order dated March 7, 2024,

---

[1] On the same day, Plaintiff filed a "Stipulation of Dismissal Without Prejudice as to [Access Bank]." (D.E. No. 6). By Order dated June 25, 2021, the undersigned directed the Clerk of the Court to mark Access Bank as "terminated" on the docket, noting: "it appears that, by operation of the amended complaint plaintiff filed on the same day, [Access Bank] is no longer a defendant in this case." (D.E. No. 7).

3

Magistrate Judge Wettre administratively terminated this matter while that process—projected to take over a year—ran its course.  (D.E. No. 76).

When its efforts to serve Access Bank through official channels failed, Plaintiff filed a motion for leave to serve that entity by alternative means, pursuant to Federal Rule of Civil Procedure 4(f).  (D.E. No. 83).  Magistrate Judge Wettre granted that motion, in part, by Order dated July 17, 2025, (D.E. No. 84), and Plaintiff served Access Bank in accordance with Her Honor's Order on or about August 14, 2025.  (D.E. No. 86).  On September 26, 2025, Access Bank moved to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (*See generally* D.E. No. 88-1 ("Mov. Br.")).  That motion is now fully briefed, (D.E. Nos. 97 ("Opp. Br." & 101 ("Reply Br.")), and ripe for adjudication.

## II.    DISCUSSION

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss a complaint for lack of personal jurisdiction.  When reviewing a motion to dismiss under Rule 12(b)(2), courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).  The plaintiff bears the burden of establishing the court's jurisdiction over the defendant.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation.  *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  Rather, the plaintiff need only present "a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Id.* at 1223 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d

434, 437 (3d Cir. 1987)). Once the plaintiff meets this burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable. *Carteret Sav. Bank*, 954 F.2d at 150.

A federal court engages in a two-step inquiry to determine whether it may exercise personal jurisdiction over a defendant. First, the court must determine whether the relevant state long-arm statute permits the exercise of jurisdiction; second, the court must then satisfy itself that the exercise of jurisdiction comports with due process. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4–4(c)). Under the Constitution, personal jurisdiction can be established either through general or specific jurisdiction. *See Bristol-Myers Squibb v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). The Court will address both potential bases in turn.[2]

### 1.    General Jurisdiction

A district court may exercise general jurisdiction when a defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The Supreme Court has observed that "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (citation omitted). Likewise, the United States Court of Appeals for the Third Circuit has recognized that "it is 'incredibly difficult to establish general jurisdiction over a

---

[2] If the court does not hold an evidentiary hearing, a plaintiff need only present "a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank*, 960 F.2d at 1223 (quoting *Provident Nat'l Bank*, 819 F.2d at 437). The governing standard, then, is similar to that on an ordinary Rule 12(b)(6) motion to dismiss, which is directed to the face of the pleadings plus documents of which the court may properly taken notice. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

corporation in a forum other than the place of incorporation or principal place of business.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017) (quoting *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (citation modified).

Based on the current record, the Court finds that it lacks general jurisdiction over Access Bank, which appears to be a Nigerian entity with a principal place of business in Lagos, Nigeria. (SAC ¶ 3; D.E. No. 88-3). For general jurisdiction purposes, it is thus considered "at home" in Nigeria, not New Jersey. Plaintiff has not alleged facts suggesting that this is an "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. Accordingly, this Court lacks general jurisdiction over Access Bank. Plaintiff appears to concede this is the case, but "respectfully seeks discovery in order to establish that such jurisdiction exists." (Opp. Br. at 11). As Plaintiff has not articulated any explanation of how a Nigerian bank with its principal place of business in Nigeria might be "at home" in New Jersey, the Court denies that request, which would be a waste of both time and resources.

### 2.    Specific Jurisdiction

Access Bank argues that this Court lacks specific jurisdiction over it because, "[i]n short, Access Bank has no connection to New Jersey—either as a general matter, or, more importantly, specifically relating to or arising out of Plaintiff's claims." (Mov. Br. at 10). In turn, Access Bank contends that the exercise of jurisdiction would not "comport with traditional notions of fair play and substantial justice." (*Id.*). In opposition, Plaintiff argues that Access Bank is subject to personal jurisdiction in New Jersey because it "purposely directed" its actions at Plaintiff, a state resident. (Opp. Br. at 11 at 11–12). Plaintiff further contends that, because it asserts claims for

6

intentional torts, the Court must apply the "effects test" that the Supreme Court articulated in *Calder v. Jones*, 465 U.S. 783 (1984). (Opp. Br. at 12–13). Plaintiff also argues that Access Bank's alleged use of a United States-based "correspondent" bank account (i.e., an account with Citibank) is sufficient to subject it to personal jurisdiction in New Jersey. (*Id.* at 14–15). Finally, Plaintiff makes various public policy-related arguments for the imposition of jurisdiction. (*Id.* at 15–17). In its reply, Access Bank made several arguments, including that (i) Plaintiff has not established that it has any connections to New Jersey; and (ii) the Citibank account in question— ostensibly Access Bank's connection to the facts of this case—is located in *New York*, not New Jersey. (Reply at 2–5).

Specific jurisdiction arises from "an 'affiliation between the forum and the underlying controversy,'" and a district court exercising specific jurisdiction "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted). To determine whether specific jurisdiction is appropriate, courts must conduct a three-pronged test. First, the defendant must have "purposefully directed his activities at the forum." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claim must "arise out of or relate to at least one of those specific activities." *Id.* The Court notes that the "central concern" of the second prong is "the relationship among the defendant, the forum, and the litigation." *Daimler*, 571 U.S. at 126 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 197 (1977)). Third, if the prior two requirements are met, a court must consider whether the exercise of jurisdiction otherwise comports with "'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (citation omitted).

7

Here, the Court's analysis ends with the first prong, as Plaintiff has not made a prima facie showing that Access Bank purposefully directed any activities at New Jersey, let alone actions related to Plaintiff's claims.  With respect to that Access Bank, Plaintiff alleges:

- Access Bank "participated in an ongoing wire fraud scheme" by maintaining an account for Defendant Miguel Francisco; (Am. Compl. ¶¶ 29 & 37).

- Access Bank "was a part of the fraud" because it ultimately received funds the funds that Plaintiff wired to Defendant Miguel Francisco, (id. ¶¶ 29 & 38); and it "ignor[ed] the red flags that would have arisen had [it] properly followed its customer due diligence procedures" or otherwise "allow[ed] a fraudulent entity to maintain an account at its bank." (Id. ¶ 38).

In essence, Plaintiff contends that Access Bank received a wire transfer and failed to take certain steps vis-à-vis Defendants Diamond, PLC or Francisco.  Plaintiff also, somewhat contradictorily, alleges that Access Bank acted negligently by "thereafter knowingly and/or acting with blindness in wiring the same [to] the Defendant Diamond and/or Defendant Manuel Francisco", (id. ¶ 46), while also repeatedly alleging that Access Bank retains the funds to date, (id. ¶¶ 41 & 52).  In any event, Plaintiff does not allege that Access Bank—a Nigerian entity—did *any* of these things in New Jersey.  Nor does Plaintiff allege that any Citibank–to–Access Bank wire originated from New Jersey.  (*See generally id.*).

Plaintiff also argues that the Court may impose personal jurisdiction over Access Bank based on that entity's alleged maintenance of a "correspondent" bank account with Citibank. (Opp. Br. at 13–15).  Plaintiff has not alleged, however, that the Citibank account in question was in New Jersey.  Nor does Plaintiff suggest that the excerpt of Citibank records it submitted with its opposition demonstrates the same.  (*See generally id.*).  Indeed, Plaintiff argues that the Citibank account in question is the one Access Bank "used to procure from Plaintiff the fraudulent wire transfer."  (Opp. Br. at 14).  But the records Plaintiff submitted in connection with that transfer reflect an account based in New York.  (D.E. No. 97-1 at 21–24 (ECF Pagination)).  Plaintiff has

8

not offered any support for the contention that the maintenance of a bank account in New York might suffice as a basis for personal jurisdiction in New Jersey.[3]   In short, Plaintiff suggests, without citation or elaboration, that its allegations "demonstrate[] that [Access Bank] purposefully availed itself of the banking system in New Jersey[.]" (Opp. Br. at 15).  Plaintiff has not explained *how*.

Nor does the Court's consideration of the *Calder* effects test alter the analysis.  "Generally speaking, under *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).  Considering case law from its sister circuits, the United States Court of Appeals for the Third Circuit has expressly rejected the idea that, under *Calder*, personal jurisdiction will lie as long as "that the harm caused by the defendant's intentional tort is primarily felt within the forum." *Id.* at 265.  Instead, "the *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *Id.*  Critically, a plaintiff cannot satisfy this requirement by "simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum . . ..  The defendant must 'manifest behavior

---

[3]      Plaintiff cites the United States Court of Appeals for the Second Circuit's decision in *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013).  In *Licci*, however, the court considered whether a foreign entity's use of a New York-based "correspondent" bank account—an activity New York's highest state court had previously found to constitute a "transaction" of business in New York under the state's long-arm statute—was a constitutionally sufficient basis for subjecting that entity to personal jurisdiction in New York. *See generally id.  Licci* is inapplicable here, as Plaintiff has not alleged that Access Bank used a New Jersey-based bank account in connection with this matter.

intentionally targeted at and focused on' the forum for *Calder* to be satisfied." *Id.* Summarizing its analysis, the Third Circuit held:

> [T]he *Calder* "effects test" requires the plaintiff to show the following: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."

*Id.* at 265–66. The Third Circuit clarified: "in order to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266.

The Court finds that Plaintiff's allegations satisfy the first two prongs of the *Calder* effects test. Nothing in the motion record, however, reflects that Access Bank even knew Plaintiff was located in New Jersey, let alone that it somehow targeted Plaintiff there, or otherwise directed its activities to New Jersey. As Plaintiff has therefore not met the third *Calder* prong, Access Bank is not subject to personal jurisdiction under the "effects test."

Finally, the Court briefly addresses Plaintiff's miscellaneous policy-based arguments. Plaintiff suggests that the Court has personal jurisdiction over Access Bank because: (i) Access Bank was named as a defendant in case involving an unrelated wire fraud scheme in the Southern District of California; (Opp. Br. at 15–16); (ii) New Jersey should be able to assert jurisdiction over global banking entities that benefit from the state's banking system; (*id.* at 16); and (iii) New Jersey has a "manifest interest in protecting its residents and financial institutions from international bank fraud and misconduct[,]" (*id.* at 16–17). Plaintiff has not provided any legal

basis—or, in the case of its argument concerning Access Bank's use of New Jersey's banking system, any factual basis—for those positions.

In sum, the Court holds that Plaintiff has not established that Access Bank is subject to personal jurisdiction in New Jersey. Despite the age of this matter, this is the Court's first opportunity to consider Plaintiff's claims against that entity. The Court will, therefore, permit Plaintiff an opportunity to amend its pleading to address the shortcomings discussed herein.

### B. Motion to Dismiss for Failure to State a Claim

As Plaintiff has not established that Access Bank is subject to personal jurisdiction in the District of New Jersey, the Court need not, and does not, reach Access Bank's arguments pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mov. Br. at 10–17). The Court will, therefore, deny that portion of Access Bank's motion, *without prejudice*, as moot.

### III. CONCLUSION

For the foregoing reasons, Access Bank's motion to dismiss is **GRANTED IN PART** and **DENIED** *without prejudice* **IN PART**. Plaintiff's claims against Access Bank are dismissed, without prejudice, for lack of personal jurisdiction. Plaintiff may file an amended pleading addressing the shortcomings discussed herein within 30 days. The balance of Access Bank's motion is denied as moot.

An appropriate Order follows.

**Date**: June 23, 2026

s/ Esther Salas
Hon. Esther Salas, U.S.D.J.